**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**VILLAGE SQUARE CONDOMINIUM OF
ORLANDO, INC. ,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:09-cv-1711-Orl-31DAB**

**NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,**

        **Defendant.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of Plaintiff's, Village Square Condominium of Orlando, Inc. ("Plaintiff"), Motion to Remand (the "Motion") (Doc. 18), and Defendant's, Nationwide Mutual Fire Insurance Company ("Defendant"), response in opposition thereto (Doc. 19).

**I. Background**

Plaintiff is a Florida non-profit condominium association (*see generally* Doc. 2). On August 13, 2004, Hurricane Charley allegedly damaged Plaintiff's condominium complex (Doc. 2, ¶¶ 2 and 7). Nearly four years later, on April 9, 2008, Plaintiff provided its property insurer, Defendant, with a "Sworn Statement in Proof of Loss" in which it claimed $880,384.83 in covered losses (Doc. 18-4 at 2). After another year passed, on April 7, 2009, Plaintiff sued Defendant in

state court, alleging, *inter alia*, that Defendant breached its contract of insurance by refusing to pay for all of Plaintiff's covered losses (Doc. 2, ¶ 7).[1]

Although the Complaint revealed that the parties were diverse, Plaintiff did not demand a specific amount of damages. Instead, Plaintiff simply alleged that the state court's jurisdictional minimum of $15,000 had been met (Doc. 2, ¶ 1). Soon after it made its initial appearance, Defendant served Plaintiff with a limited set of interrogatories focused specifically on the amount of Plaintiff's damages (Doc. 1-5 at 22). Plaintiff responded on September 14, 2009, swearing that its damages amounted to $881,384.83 (Doc. 1-5 at 25). On October 8, 2009, Defendant removed the case pursuant to 28 U.S.C. §§ 1332 and 1441(Doc. 1).

In its Motion, Plaintiff argues that this case must be remanded on procedural grounds.[2] Specifically, Plaintiff contends that Defendant violated 28 U.S.C. § 1446(b) because it removed the case more than thirty (30) days after it first learned that the case was removable (Doc. 18 at 3).[3] According to Plaintiff, Defendant first learned that the case was removable almost a year before the Complaint was even filed, i.e., on April 9, 2008 – the day that it received Plaintiff's "Sworn Statement in Proof of Loss." Irrespective, then, of Plaintiff's decision not to allege a specific

---

[1]Specifically, Plaintiff alleged that Defendant "paid a portion of the losses, damages, and claims to [sic] the Property but not all of them" (Doc. 2, ¶ 9).

[2]Plaintiff concedes that the amount in controversy exceeds $75,000, that the parties are diverse and that the Court therefore has subject matter jurisdiction (*see generally* Doc. 18). Furthermore, the parties appear to agree that the only evidence regarding the amount of controversy in this case consists of: (1) Plaintiff's April 9, 2008 "Sworn Statement in Proof of Loss;" and (2) Plaintiff's September 14, 2009 response to Defendant's First Set of Interrogatories.

[3]Plaintiff also contends that Defendant waived its right to remove by actively participating in the state court litigation (Doc. 18 at 7).

amount of damages in the Complaint, Plaintiff contends that Defendant had to remove the case within thirty (30) days of being served with the Complaint – not within thirty (30) days of receiving Plaintiff's sworn answers to its first set of interrogatories – because it should have been able to intelligently ascertain from the one-year-old "Sworn Statement in Proof of Loss" that the case was removable.

## II. Standards

Unlike state courts, lower federal courts are courts of limited jurisdiction: they possess only that power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). There is a presumption that a cause lies outside this limited jurisdiction, and the burden of proving otherwise rests on the party asserting jurisdiction. *Turner v. Bank of North Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

For diversity jurisdiction to exist, no defendant may be a citizen of the same state as any plaintiff and the amount in controversy must exceed $75,000.00. *See* U.S. CONST. art. III, § 2; 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267 (1806), *overruled on other grounds*, *Louisville, Cincinnati & Charleston R.R. Co. v. Letson*, 43 U.S. 497, 555 (1844). Removal statutes are to be construed narrowly, and where the parties clash about jurisdiction, uncertainties are to be resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *see also Univ. Of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

In the removal context, where damages are unspecified in the plaintiff's complaint, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *See*, *e.g.*, *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996)). Furthermore, the amount in controversy is assessed at the time of removal – not at the time of the filing of the complaint. *See, e.g.*, *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 255 (5th Cir. 1961).

Finally, 28 U.S.C. § 1446 imposes the following thirty-day limitation on the removal of diversity cases:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b).

## III. Analysis

### A. Timeliness of Removal – Pre-Suit Documents and 28 U.S.C. § 1446(b)

According to Plaintiff, its April 9, 2008 "Sworn Statement in Proof of Loss" constitutes an "other paper from which it may first be ascertained that the case is one which is or has become removable" (Doc. 18 at 2, citing 28 U.S.C. § 1446(b)).[4] Although the "Sworn Statement in Proof of Loss" was sent nearly a year before Plaintiff filed suit, Plaintiff notes that lower courts have previously held that pre-suit documents may trigger the thirty-day limitation in 28 U.S.C. § 1446

---

[4] Plaintiff concedes that the "case stated by [its] initial pleading" was not removable (Doc. 18 at 3).

(Doc. 18 at 4 and 5, citing, *inter alia*, *Bankston v. Illinois Nat'l Ins. Co.*, 443 F. Supp. 2d 1380 (M.D. Fla. 2006)).[5] Accordingly, Plaintiff contends that Defendant had to remove within thirty days of being served with the Complaint.

The Court disagrees. Although there appears to be a split of authority regarding whether pre-suit documents can trigger the thirty-day limitation in 28 U.S.C. § 1446(b),[6] the lower court decision on which Plaintiff relies is distinguishable. *Bankston* addressed pre-suit documents in the defendant's possession that related to the plaintiff's citizenship – not to the amount in controversy. 443 F. Supp. 2d 1380 (M.D. Fla. 2006). Unlike the amount in controversy, citizenship is largely an immutable and straightforward Constitutional pre-requisite to diversity jurisdiction that is assessed at the time suit is commenced. *See*, *e.g.*, *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events," including a change in the citizenship of the parties) (citations omitted). Indeed, courts are rarely called upon to examine a party's domicile, voter registration card, driver's license, tax returns and the like, and make a determination that a party is a citizen of a given state. Although there may infrequently be a subjective or intent-based component to citizenship, the indicia used to determine citizenship are

---

[5]Plaintiff also relies on *Wagner v. Oerlikon USA, Inc.*, Case No. 8:08-CV-140, 2008 WL 2262041 (M.D. Fla. 2008); *Bragg v. Ky. RSA #9-10, Inc.*, 126 F. Supp. 2d 448 (E.D. Ky. 2001); and *Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co.*, 753 F. Supp. 660 (N.D. Oh. 1990)).

[6]*Compare, e.g., Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992) (holding that the pre-suit receipt of medical bills and demand letters does not trigger the running of the third-day clock in 28 U.S.C. § 1446(b)) *with Bankston v. Ill. Nat'l Ins. Co.*, 443 F. Supp. 2d 1380 (M.D. Fla. 2006) (finding that defendant waived its right to remove because it should have "intelligently ascertained" that parties were diverse based on pre-suit documents but failed to remove within the thirty-day time limit imposed by 28 U.S.C. § 1446(b)).

overwhelmingly objective. *See* 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed. current through 2009). As such, what a defendant may or should have known about a plaintiff's citizenship at the time suit was commenced is often apparent to both the parties and the court. In contrast, the amount in controversy requirement is frequently a subjective and contentious statutory pre-requisite to diversity jurisdiction that must be assessed not at the time suit is commenced but at the time it is removed. In the instant case, for example, Plaintiff sent Defendant a "Sworn Statement in Proof of Loss" claiming $880,384.83 in damages. It then waited nearly a year to file suit which alleged that Defendant had "paid a portion of [Plaintiff's] losses, damages, and claims. . .but not all of them" (Doc. 2, ¶ 9). Even assuming that Defendant could determine which portion of the losses Plaintiff claims that it already paid,[7] it is far from clear that Defendant knew, or should have known, that the amount of damages that Plaintiff claimed in the Complaint remained the same for an entire year.[8] In other cases, defendants often must rely on demand letters, medical bills, affidavits from experts and carefully worded (if not deliberately evasive) responses to discovery requests – each of which may have a bearing on a plaintiff's damages only at a particular point in time – in order to meet their burden of proving that

---

[7]Curiously, Plaintiff swore in its interrogatory responses that it was claiming $881,384.83 in damages. If Defendant had, in fact, paid a portion of Plaintiff's damages prior to Plaintiff filing suit, then Plaintiff's damages should have gone down – not up by $1,000 – from the $880,384.83 in damages claimed in the "Sworn Statement of Proof of Loss."

[8]Myriad events can affect the amount in controversy between the time a defendant receives a pre-suit document and the time suit is actually filed or removed. In the instant case, for example, all or part of Plaintiff's condominium development could have been sold to a third party, Plaintiff's replacement costs could have changed, or the development could have been hit by a subsequent disaster. In other cases, the statute of limitations, pre-suit settlements with third-parties, additional pre-suit investigations and new legal precedents can substantially change the amount in controversy.

the amount of controversy has been met at the time of removal. This evidence is often susceptible to multiple inferences. Unlike citizenship, then, determining what a defendant knew or could have "intelligently ascertained" about the amount in the controversy at a given point in time is inherently subjective and ambiguous. Accordingly, Plaintiff's reliance on *Bankston* is misplaced.

Notwithstanding *Bankston* and even those lower court cases that are not distinguishable,[9] the plain language of 28 U.S.C. § 1446(b) makes it clear that pre-suit documents do not constitute "other papers" that trigger the thirty-day limitation on removal. As the Fifth Circuit has observed:

> The plain language of the second paragraph of § 1446(b) requires that if an "other paper" is to start the thirty-day time period, a defendant must receive the "other paper" after receiving the initial pleading. The second paragraph of § 1446(b) applies by its terms only "if the case stated by the initial pleading is not removable . . . ." More important, the second paragraph of § 1446(b) requires that the defendant remove the case, if at all, within 30 days after receipt of an "other paper" from which the defendant may first ascertain that the case is removable. Logic dictates that a defendant can "first ascertain whether a case is removable from an "other paper" only after receipt of both the initial pleading and that "other paper"; and therefore the thirty-day time period beings to run, not from the receipt of the initial pleading, but rather from the receipt of the "other paper" revealing that the case is removable. [Plaintiff] would have us adopt a rule which would be clearly inconsistent with the plain language of the second paragraph of § 1446(b), which states that a "notice of removal may be filed within thirty days after receipt by the defendant . . . [of an] other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." By its plain terms the statute requires that if an "other paper" is to trigger the thirty-day time period of the second paragraph of § 1446(b), the defendant must receive the "other paper" only after it receives the initial pleading.

*Chapman v. Powermatic, Inc,.* 969 F.2d 160, 164 (5th Cir. 1992) (rejecting the notion that pre-suit documents can ever trigger the thirty-day limitation in 28 U.S.C. § 1446(b)). In other words, the

---

[9]*See, e.g.*, *Bragg v. Ky. RSA #9-10, Inc.*, 126 F. Supp. 2d 448 (E.D. Ky. 2001) (finding pre-suit documents regarding the amount in controversy triggered the thirty-day limitation in 28 U.S.C. § 1446(b)).

Fifth Circuit concluded that there is no "case" pending to remove when a pre-suit paper is received. While Plaintiff does not address *Chapman* in its Motion, Plaintiff concedes that the case stated by its initial pleading was not removable. To skirt the first clause of the second paragraph ("If the case stated by the initial pleading is not removable . . ."), then, Plaintiff apparently suggests that the subsequent "after receipt...of [an] other paper" language in 28 U.S.C. § 1446(b) should control regardless of when the defendant receives the "other paper" (Doc. 18 at 2). Such an interpretation, however, would render the first clause mere surplusage and write a requirement into the statute that Congress clearly neglected to contemplate. The better approach, it seems, as the Fifth Circuit concluded in *Chapman*, is that Congress contemplated only those papers that are received by the defendant *after* receipt of the initial pleading – not pre-suit documents received prior to the initial pleading.

Finally, the polices regarding removal counsel against adopting a rule that would impute knowledge of pre-suit documents to defendants. Congress has made clear its intent that defendants must be circumspect in deciding whether to remove a case. *See*, *e.g.*, 28 U.S.C. § 1447(c) (permitting courts to require defendants to pay costs and attorneys' fees when granting motions to remand). As other courts have recognized, if pre-suit documents were allowed to trigger the thirty-day limitation in 28 U.S.C. § 1446(b), defendants would be forced to "'guess' as to an action's removability, thus encouraging premature, and often unwarranted, removal requests." *Mendez v. Cent. Garden & Pet Co.*, 307 F. Supp. 2d 1215 (M.D. Ala. 2003) (quotations and citations omitted). On the other hand, a bright-line rule prohibiting the use of pre-suit documents "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." *Chapman*, 969 F.2d at 163.

Accordingly, the Court holds that pre-suit documents concerning the amount in controversy do not trigger the thirty-day clock in 28 U.S.C. § 1446(b). Plaintiff's "Sworn Statement in Proof of Loss" was therefore of no moment and Defendant's Notice of Removal was timely.

**B. Waiver**

Plaintiff also contends that Defendant waived its right to remove by actively participating in the state court litigation (Doc. 18 at 8). The contention is without merit. Defendant was clearly permitted to file an answer, motion to dismiss[10] and to engage in limited discovery in state court to determine the amount in controversy, and then, after receiving Plaintiff's responses, determine whether the case was removable. Such actions do not waive a defendant's right to remove by litigating in state court. *See*, *e.g.*, *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (quoting *Somoano v. Ryder Sys., Inc.*, 985 F. Supp. 1476, 1478 (S.D. Fla. 1998)) ("[T]he Federal Rules of Civil Procedure contemplate the filing of a responsive pleading prior to the removal of a case.").

---

[10]Defendant filed its Answer and Motion to Dismiss all on the same day (Defendant also filed a motion to strike a particular paragraph in the Complaint on the same day) (Doc. 18 at 8). The state court did not rule on either motion.

**IV. Conclusion**

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion to Remand (Doc. 18) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 10, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE